## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

NEHA SINGH, *et al.*                    *

                                    *       Civil Action No. CCB-20-1082

      v.                *

                                    *

LENOVO (UNITED STATES) INC.            *

                                    *

                                    *

                                *****

## MEMORANDUM

This putative class action raises claims related to a line of "Yoga" computer devices manufactured and sold by Lenovo United States, Inc. ("Lenovo").  The plaintiffs allege Lenovo knowingly sold the Yoga devices with defective hinges in violation of various states' consumer fraud statutes and in breach of express and implied warranties.  Before the court is Lenovo's motion to dismiss (ECF 20).  The matter has been fully briefed, and oral argument was heard on December 2, 2020.  For the reasons discussed herein, the motion will be denied.

## FACTS AND PROCEDURAL HISTORY

This suit concerns an allegedly defective series of "Yoga" two-in-one tablet and laptop computer devices manufactured by Lenovo, a North Carolina corporation.  It covers all 700-series models, including models 700, 710, 720, and 730, all of which use the same "dual-hinge system" to flex into different positions to function at times like a laptop and at times like a tablet. (ECF 1, Compl. ¶¶ 1 n1, 2–3).  The hinge system is supposed to sustain at least 25,000 "open-close cycles," which equates to approximately eight to ten years of use.  (*Id*. ¶ 46).

The plaintiffs contend that the devices are defective "in that [they] prematurely and unexpectedly crack[] and fail[], rendering the hinges inoperable[.]"  (*Id*. ¶ 4).  When the hinges fail, this causes optical cables to come loose, the screen to flicker, and the plastic surrounding the screen—and sometimes the screen itself—to crack, rendering the devices inoperable.  (*Id*. ¶ 5).

The plaintiffs allege Lenovo knew of the problem before it sold the products and chose to conceal the defect.  (*Id*. ¶ 6).  This knowledge purportedly came to Lenovo through multiple sources, including Lenovo's own durability testing, repair data, replacement data, and consumer complaints.  (*Id*. ¶ 53).  Additionally, the plaintiffs assert that Lenovo's redesign of the hinge on its Yoga 900 series model, which uses a watchband hinge, indicates Lenovo knew the hinge system used in the 700-series was defective.  (*Id*. ¶¶ 77–78).

Lenovo provides an express one-year warranty, limited to product replacement or repair, that its products will be "free from defects in materials and workmanship under normal use[.]" (*Id*. ¶¶ 84–85).  The plaintiffs argue that this warranty "fails of its essential purpose," as at best it allows consumers to replace one defective hinge with another, and is therefore "unconscionable and unenforceable."  (*Id*. ¶¶ 86, 89).

On March 27, 2020, plaintiffs Neha Singh of Maryland and Sandra Cox of Missouri filed this class action pursuant to the Class Action Fairness Act against Lenovo, asserting seven causes of action: (1) violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301; (2) breach of express warranty; (3) breach of implied warranty; (4) violation of the Maryland Consumer Protection Act ("MCPA"), Md. Ann. Code, Com. Law § 13-301; (5) violation of the Missouri Merchandise Practices Act ("MMPA"), Mo. Rev. Stat. § 407.010; (6) unjust enrichment; and (7) fraudulent omission or concealment.  (*Id*. ¶¶ 103–183).

The plaintiffs seek to certify a nationwide class under Fed. R. Civ. P. 23(b)(2) or (b)(3). Should the court not approve a nationwide class, the plaintiffs would then seek to certify statewide classes representing consumers in Maryland and Missouri, where the named plaintiffs reside.  (*Id*.  ¶ 94).  The plaintiffs seek damages, injunctive relief, and declaratory relief, as well as an award of attorneys' fees and costs.

On August 12, 2020, Lenovo moved to dismiss the claims against it. (ECF 20). The plaintiffs have responded (ECF 23) and Lenovo has replied (ECF 24). A motions hearing was held on December 2, 2020. (ECF 26).

STANDARD OF REVIEW

To survive a motion to dismiss, the factual allegations of a complaint "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). "To satisfy this standard, a plaintiff need not 'forecast' evidence sufficient to prove the elements of the claim. However, the complaint must allege sufficient facts to establish those elements." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted). "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). Additionally, although courts "must view the facts alleged in the light most favorable to the plaintiff," they "will not accept 'legal conclusions couched as facts or unwarranted inferences, unreasonable conclusions, or arguments'" in deciding whether a case should survive a motion to dismiss. *U.S. ex rel. Nathan v. Takeda Pharm. North Am., Inc.*, 707 F.3d 451, 455 (4th Cir. 2013) (quoting *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 365 (4th Cir. 2012)).

DISCUSSION

**I.      STANDING**

Courts have an independent obligation to assure that standing exists. *See Summers v. Earth Island Inst.*, 555 U.S. 488, 499 (2009). An "irreducible constitutional minimum," standing requires that a plaintiff have suffered (1) an injury in fact, (2) caused by the defendant, and (3)

redressable by a favorable decision of the court. *Lujan v. Defenders of Wildlife*, 504 U.S. 555,

560–61 (1992).  In this case, Lenovo argues that the plaintiffs—who purchased only the model

710 Yoga—lack standing to pursue the class claims relating to Yoga models 700, 720, and 730.

(*See* ECF 20-2- at 15).

Some jurisdictions do follow the "standing approach," which Lenovo urges this court to

employ, in which courts evaluate at the motion to dismiss stage whether a proposed class

representative has standing to pursue relief suffered by proposed class members that differ from

the named plaintiff's own injuries.  *See Williams v. Potomac Family Dining Group Operating

Co.*, No. GJH-19-1780, 2019 WL 5309628, at *4 (D. Md. Oct. 21, 2019) (discussing the

different approaches).[1]  Most jurisdictions, however, have adopted a "class certification"

approach, allowing an action to proceed once the named plaintiff demonstrates her individual

standing to bring a claim, leaving for the Rule 23(a) analysis questions about commonality,

typicality, and adequacy of representation.  *Id.*; s*ee also Melendres v. Arpaio*, 784 F.3d 1254,

1262 (9th Cir. 2015).  The Fourth Circuit Court of Appeals has not mandated either approach,

but several district courts in this circuit have endorsed or applied the class certification approach.

*See, e.g., Hendrick v. Caldwell*, 232 F. Supp. 3d 868, 882 (W.D. Va. 2017), *vacated on other

grounds by Manning v. Caldwell for City of Roanoke*, 930 F.3d 264 (4th Cir. 2019); *In re Mutual

Funds Inv. Litig.*, 519 F. Supp. 2d 580, 586–87 (D. Md. 2007); *Williams*, 2019 WL 5309628, at

*4; *Henderson v. Corelogic Nat'l Background Data, LLC*, No. 3:12CV97, 2016 WL 4611570, at

*3 (E.D. Va. Sept. 2, 2016).

Indeed, since standing is "primarily concerned with ensuring that a real case or

controversy exists," questions about the "relationship between the class representatives and the

---

[1] Unpublished opinions are cited for the soundness of their reasoning rather than for their precedential value.

class" are best resolved in a Rule 23 analysis.  WILLIAM B. RUBENSTEIN, NEWBERG ON CLASS ACTIONS § 2:6 (5th ed. December 2020 update).  As previously noted, Supreme Court precedent indicates that a plaintiff has Article III standing to assert a claim in a putative class action "where she plausibly alleges that (1) she has suffered an injury in fact traceable to a defendant and redressable by the court, *and* (2) her claimed injury is shared in common with others who have been similarly harmed by the same defendant's actions."  *In re Mutual Funds Inv. Litig.*, 519 F. Supp. 2d at 586.  In this case, the plaintiffs allege that all of the 700-series Yoga models used the same defective hinge, which Lenovo misrepresented in the same way: specifically, their complaint states the "defective" dual-hinge system is "identical" across all 700-series models "with respect to design, form, assembly, and function" and the hinges are all "assemble[d]" in "the exact same manner[.]"  (ECF 1 ¶¶ 3–4, 45).  By characterizing the plaintiffs' injuries as ones uniquely stemming from certain models—rather than commonly from a single hinge system—Lenovo obscures the similarities between the named plaintiffs' injuries and the class injuries in a manner that may prematurely limit the size of the class and that does not address whether a real case or controversy exists.  Though it is difficult, based on the pleadings alone, for the court to envision certifying a nationwide class, the court today draws no conclusions as to the proper scope of the putative class, the adequacy of the named plaintiffs to represent such a class, or whether such a class is likely to be certified.[2]  But for the purposes of ruling on the pending motion to dismiss, the court concludes that the plaintiffs allege they suffered concrete injuries—shared with others

---

[2] During oral argument, Lenovo invoked the recent opinion of this court in *Rosedale v. Carchex*, No. SAG-19-2780, 2020 WL 6801922, at *4 (D. Md. Nov. 19, 2020).  In that case, the court noted in deciding a motion to dismiss that it has "a duty to control the scope and extent of discovery under Federal Rule of Civil Procedure 26(b)" and would therefore "not permit class allegations to proceed to discovery where it is abundantly clear that the purported class, as stated, cannot be certified."  But that case dealt with a sole Pennsylvania plaintiff bringing class claims on behalf of Pennsylvania *and* Maryland residents.  In this case, it is not "abundantly clear" that a class could not be certified: Singh (a Maryland resident) and Cox (a Missouri resident) both purchased Yoga models containing the same defective hinge system, and seek to represent classes comprised of residents of their respective states who purchased products containing the same hinge system.

similarly harmed by the same defective hinge system—which are traceable to a single defendant, Lenovo, and which this court has the power to redress.  Nothing more is required to satisfy Article III's standing requirement.

Nor do the cases cited by Lenovo compel a different result.  Only two of those cases were decided within this circuit.  *Chambers v. King Buick* held only that a plaintiff in a putative class action may not assert claims against defendants with whom she has never had any dealings.  43 F. Supp. 3d 575, 583–85 (D. Md. 2014).  Here, by contrast, there is but one defendant against whom the plaintiffs seek relief for a similar harm.  And *In re Sinclair Broadcast Group, Inc. Sec. Litig.* is inapplicable as it concerned a sole institutional plaintiff which conceded it had lost standing.  --- F. Supp. 3d ----, No. CCB-18-2445, 2020 WL 4052859, at *10 (D. Md. July 20, 2020).  The other cases cited by Lenovo, such as *Kelly v. Cape Cod Potato Chips Company, Inc.* 81 F. Supp. 3d 754, 763 (W.D. Mo. 2015), are not binding authority on this court.  Moreover, *Lieberson v. Johnson & Johnson Consumer Companies, Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011), a case from the District of New Jersey, has been called into question by a judge in this district as an attempt "to litigate the appropriate bounds of a class at the motion to dismiss stage[,]" when the "proper time to challenge the inclusion of putative class members . . . is at the class certification stage[.]"  *Van Buren v. Walmart, Inc.*, No. DKC 19-0911, 2020 WL 1064823, at *3 (D. Md. Mar. 5, 2020) (appeal filed).

The court holds that the plaintiffs have standing to pursue their claims and that Lenovo's arguments, which concern the appropriate scope of the action rather than whether the plaintiffs have standing, are best resolved at the class certification stage.

## II.        BREACH OF WARRANTY CLAIMS

The plaintiffs assert three breach of warranty claims: one under the MMWA, one for breach of express warranty, and one for breach of implied warranty.  The MMWA provides a federal remedy for failure to comply with a warranty, but only after a plaintiff has first established a breach of warranty under state law.  *See Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 545 (D. Md. 2011).  Therefore, the three claims collapse into two claims—one for breach of express warranty, and one for breach of implied warranty.  The court will examine each in turn.

### A.        Breach of Express Warranty

To state a claim for breach of express warranty under Maryland law, a plaintiff must allege: (1) the existence of a warranty; (2) that the product did not conform to the warranty; and (3) that the breach proximately caused injury or damage.  *Robinson v. Am. Honda Motor Co., Inc.*, 551 F.3d 218, 223 (4th Cir. 2009).  Under Missouri law, a plaintiff must allege: (1) the defendant sold goods to the plaintiff; (2) the defendant made a statement of fact about the kind or quality of those goods; (3) the statement of fact was a material factor inducing the buyer to purchase those goods; (4) the goods did not conform to that statement of fact; (5) the nonconformity injured the buyer; and (6) the buyer notified the defendant of the nonconformity in a timely fashion.  *Renaissance Leasing, LLC v. Vermeer Mfg. Co.*, 322 S.W. 3d 112, 122 (Mo. 2010).

Lenovo argues that the plaintiffs' claims cannot succeed under either state's pleading standards because they do not allege that their products suffered any defect within one year of purchase.  (ECF 20-2 at 18).  The plaintiffs do not contest that they sought warranty coverage more than two and three years, respectively, after purchasing their products, but nevertheless

counter that it does not matter that the defect manifested after the expiration of the warranty period because they allege the warranty is unconscionable and unenforceable.  (ECF 23 at 17).

The Uniform Commercial Code ("UCC"), adopted in both Maryland and Missouri, provides that if the court as a matter of law finds a contract or any clause thereof was unconscionable at the time it was made, the court may (1) refuse to enforce the contract; (2) enforce the remainder of the contract without the offending clause; or (3) limit the application of the offending clause.  Md. Ann. Code, Comm. Law, § 2-302(1); Mo. Rev. Stat. § 400.2-302(1). But when "it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination."  Md. Ann. Code, Comm. Law, § 2-302(2); Mo. Rev. Stat. § 400.2-302(2); *see also Carlson v. General Motors*, 883 F.2d 287, 292 (4th Cir. 1989) (noting that though unconscionability is a question of law, claims of unconscionability should "but rarely be determined on the bare-bones pleadings" with "no opportunity for the parties to present relevant evidence").  Courts have "strictly adhered" to the UCC's "express requirement" that a reasonable opportunity to present evidence relating to a charge of unconscionability be afforded.  *See Carlson*, 883 F.2d at 293.  To support a finding of unconscionability, Maryland courts require a showing of both substantive and procedural unconscionability, while Missouri courts examine more holistically the facts relating to unconscionability that affected the formation of the contract.  *Bracey v. Lancaster Foods, LLC*, No. RDB-17-1826, 2018 WL 1570239, at *4 (D. Md. Mar. 30, 2018); *Williams v. United Techs. Corp.*, No. 2:15-cv-04144-NKL, 2015 WL 7738370, at *3 (W.D. Mo. Nov. 30, 2015); *see also Holloman v. Circuit City Stores, Inc.*, 391 Md. 580, 602 (2006); *Brewer v. Mo. Title Loans*, 364

S.W.3d 486, 492 n.3 (Mo. 2012).  Because the Maryland standard is more difficult to meet, the

court will first evaluate whether Singh has satisfied that standard before evaluating Cox's claim.

### 1.   *Procedural Unconscionability under Maryland Law*

Procedural unconscionability concerns the process of making a contract and tends to look

like fraud or duress.  *Freedman v. Comcast Corp.*, 190 Md. App. 179, 208 (Md. Ct. Spec. App.

2010).  This "includes concerns such as the use of fine print and convoluted or unclear language,

and deficiencies in the contract formation process, such as deception . . . and one party's lack of

meaningful choice."  *Id.* (internal quotation marks omitted).  A contract of adhesion is not *per se*

unconscionable, as courts have a duty to examine "the substance of the particular provision[s] at

issue[.]"  *Walther v. Sovereign Bank*, 386 Md. 412, 431 (2005).

Neha Singh, the Maryland plaintiff, contends that Lenovo deprived her "of a meaningful

choice by concealing the Defect, thereby abusing its bargaining power, sophistication,

knowledge, and expertise[.]"  (ECF 23 at 22; *see also* ECF 1 ¶¶ 90–91).  Lenovo counters that

her allegations fall short in that she does not allege she had no choice but to buy the Yoga 710 or

that she could not have chosen to extend the one-year limited warranty; instead, as Lenovo points

out, the plaintiffs researched different laptops before choosing the Yoga.  (ECF 20-2 at 20).

Singh relies principally on *Carlson v. General Motors*, in which the plaintiffs alleged that

General Motors knew of and did not disclose "major, inherent product defects" in diesel engines

"subject to frequent breakdowns" in violation of the implied warranty of merchantability and the

MMWA.  883 F.2d at 289, 296.  *Carlson* concerned a group of plaintiffs who purchased

automobiles with diesel engines subject to either a twenty-four-month, twenty-four-thousand-

mile express warranty, or a thirty-six-month, fifty-thousand-mile express warranty—both of

which disclaimed all implied warranties on the same time frame.  *Id*. at 290.  Of the 183

plaintiffs named in the complaint, 107 alleged that they encountered "substantial difficulties with their diesel cars only after all applicable express warranties had expired" and "hence after the purportedly 'simultaneous' expiration of any implied warranties."  *Id.*  The district court rejected the plaintiffs' arguments that General Motors's knowledge of the defect rendered the warranties unconscionable, but the Fourth Circuit reversed, holding that these allegations were sufficient to survive a motion to dismiss, and noting that "[e]vidence of the 'knowledge of [a] stronger party that the weaker party will be unable to receive substantial benefits from the contract'—or any related showing that 'the transaction involved elements of deception'—should in most cases 'contribute to a finding of unconscionability in the bargaining process.'"  *Id.* at 296 (quoting RESTATEMENT (SECOND) OF CONTRACTS § 208 comment d (1981)).

This case is analogous to *Carlson* and commands the same result.  Singh has shown procedural unconscionability by alleging that Lenovo, a party with superior knowledge and power, knew of an inherent defect which would manifest outside the warranty period, leaving her unable to receive the substantial benefit of the contract.  In particular, Singh alleges that Lenovo, before placing the Yoga into the stream of commerce, knew of the defect through its own internal testing, through customer reports, and through repair data, among other sources, and that Lenovo's "efforts to limit the duration of express and implied warranties in a manner that would exclude warranty coverage" is "unconscionable."  (ECF 1 ¶¶ 6, 63, 90).  Though Lenovo argues that the Fourth Circuit only concluded the plaintiffs in *Carlson* had pled a lack of meaningful alternative because they alleged a lack of effective warranty competition among car manufacturers, *see* 883 F.2d at 294, it is not clear that a failure to allege a lack of warranty competition is fatal, and in any event, the plaintiffs here do allege that they had "no other options for negotiating the terms" of Lenovo's limited warranty.  (ECF 1 ¶ 124).  Additionally, the

*Carlson* court concluded that pleading facts showing an absence of meaningful choice and a substantial disparity in bargaining power "clearly would establish" unconscionability.  883 F.3d at 294.  This much Singh has done.[3]

### 2.    *Substantive Unconscionability under Maryland Law*

Substantive unconscionability involves one-sided terms that resemble clauses contrary to public policy or contrary to law.  *Freedman*, 190 Md. App. at 208.  These terms are unreasonably favorable to the more powerful party, impair the integrity of the bargaining process or otherwise contravene the public interest or public policy, attempt to alter in an impermissible manner the fundamental duties otherwise imposed by the law, or are otherwise unreasonable and unexpectedly harsh.  *Id.* at 290 (quoting *Walther*, 386 Md. at 426).

Here, Singh argues that the one-year limit on Lenovo's warranty is substantively unconscionable in that it "shocks the conscience" and is "unduly harsh" given that Lenovo allegedly knew of the latent defect, knew it was likely to manifest only after the expiration of the one-year warranty, and left consumers with no remedy.  (ECF 23 at 19).  Singh states that Lenovo attempted to use that knowledge "to limit the duration of express and implied warranties in a manner that would exclude warranty coverage," ensuring that the warranty would "fail[] of its essential purpose."  (ECF 1 ¶¶ 86, 90).  Lenovo counters that allegations of knowledge of a defect, without more, do not amount to substantive unconscionability.  (ECF 20-2 at 21).

Substantive unconscionability may be based on an inherent defect in a warranted product when there is "some link between the defect and the objective unfairness of the warranty terms,"

---

[3] Lenovo cites *Berenblat v. Apple, Inc.* for the proposition that procedural unconscionability will not lie where the terms of a limitation are prominent in the warranty text and where consumers may choose to purchase similar products from competitors.  No. 08-4969 JF (PVT), 09-1649 JF (PVT), 2010 WL 1460297, at *4 (N.D. Cal. Apr. 9, 2010).  But that unpublished, out-of-circuit opinion based on California law does not provide the court with a sufficient basis to depart from the clearly established precedent of the Fourth Circuit Court of Appeals.  *Carlson* controls here.

even if it may not be found "solely" where "one party conceals certain information during the bargaining process." *Hart v. Louisiana-Pac. Corp.*, 641 F. App'x 222, 228, 229 (4th Cir. 2016) (and collecting cases). *Carlson* again provides an illustrative example: as explained previously, the plaintiffs in *Carlson* plausibly alleged unconscionability because they alleged that the manufacturer concealed latent defects and imposed durational limits on its implied warranty, and the defect only manifested after the limitation had lapsed, effectively leaving the consumers with no remedy at all. *Id.* at 228. Another example is *Bussian v. DaimlerChrysler Corp.*, a case applying North Carolina's version of the UCC provision at issue here, and where the plaintiff also adequately alleged substantive unconscionability by pointing to a latent defect which only manifested itself after an express warranty had lapsed, leaving the plaintiff with no remedy whatsoever. 411 F. Supp. 2d 614, 622 (M.D.N.C. 2006) (alleging the automobile "contain[ed] a latent defect of which Defendants were actually or constructively aware at the time of sale, and purchasers lacked a meaningful choice with respect to the terms of the warranty due to unequal bargaining power and a lack of warranty competition.").

In this case, as explained above, the plaintiffs allege that the defect in the Yoga, which Lenovo concealed, completely deprived them of the device's "defining feature: the ability to use their Device as either a tablet or a laptop"—i.e. that they were substantially deprived of the benefit of the contract due to the concealed defect, which Lenovo knew would manifest after the expiration of the warranty. (ECF 1 ¶ 4). In that sense, the plaintiffs' allegations are similar to those in *Bussian* and *Carlson* and establish the overreaching that is necessary for a finding of substantive unconscionability.

Lenovo's arguments do not compel a different result. First, Lenovo's reliance on *Hart*, 641 F. App'x at 228–229, is misplaced. That case dealt with a defect which the company knew

was likely manifest prior to, rather than after, the expiration of the ten-year warranty, leaving the consumer with an adequate remedy. *Id*. at 228. And to the extent that *Carlson* and *Hart* require something more than allegations of knowledge of a defect to show substantive unconscionability, the plaintiffs here do allege more—specifically that the warranty period was drawn in a manner that would exclude coverage once the defect had manifested, causing the warranty to "fail of its essential purpose." (ECF 1 ¶¶ 86, 90). Second, this court is bound to follow the precedent established by the Fourth Circuit Court of Appeals in *Carlson*, and is more persuaded by the opinion in *Bussian* than by the other unpublished or out-of-circuit decisions which are cited by Lenovo.[4]

The court therefore concludes that Singh has adequately alleged unconscionability sufficient to defeat Lenovo's motion to dismiss.

### 3.    *Unconscionability under Missouri Law*

Sandra Cox, the Missouri plaintiff, raises substantially the same allegations against Lenovo as Singh does. Because Singh has adequately alleged both procedural and substantive unconscionability, Cox's allegations will likewise suffice, as Missouri law applies an approach which considers but does not require finding both procedural and substantive unconscionability. *See Brewer v. Mo. Title Loans*, 364 S.W.3d at 492 n.3. Still, Lenovo argues that Cox's unconscionability claim must fail because she had the ability to discover the defect prior to purchasing her Yoga. (ECF 20-2 at 21). But the lone unpublished case Lenovo cites for this proposition, *Williams v. United Technologies Corporation*, states only that "one party's superior ability to discover a defect" is just one "factor" "relevant to the unconscionability analysis."

---

[4] These cases include *Davidson v. Apple, Inc*., No. 16-cv-4942-LHK, 2017 WL 3149305, *22-26 (N.D. Cal. July 25, 2017), *Ponzio v. Mercedes-Benz USA*, 447 F. Supp. 3d 194, 257 (D.N.J. 2020), and *Weske v. Samsung Elecs., Am. Inc*., 934 F. Supp. 2d 698, 705-06  (D.N.J. 2013).

2015 WL 7738370, at *3.  In this case, it is Lenovo—not Cox—who, as the manufacturer of the product, had the superior ability to discover the latent defect.

Accordingly, Lenovo's motion to dismiss will be denied as to both Singh's and Cox's breach of express warranty claims.

### B.       Breach of Implied Warranty

The plaintiffs also assert claims for breach of the implied warranty of merchantability. Under Maryland law, this requires alleging: (1) a warranty existed; (2) the product did not conform to the warranty; and (3) the breach of warranty by the seller was the cause of the injury. *Lloyd v. General Motors Corp.*, 397 Md. 108, 157–58 (2007).  Under Missouri law, it requires alleging: (1) a merchant sold goods; (2) which were not merchantable at the time of sale; (3) injury and damages to the plaintiff; (4) proximately or in fact caused by the defective nature of the goods; and (5) notice to the seller of the injury.  *Hope v. Nissan N. Am., Inc.*, 353 S.W.3d 68, 90 (Mo. Ct. App. 2011).  In order to recover damages for a merchantability claim under both Maryland and Missouri law, a buyer must notify the seller of the breach.  *See* Md. Code Ann., Com. Law § 2-607(3); *see also Doll v. Ford Motor Co.*, 814 F. Supp. 2d 526, 542 (D. Md. 2011); *Hope*, 353 S.W.3d at 90.

Lenovo argues that the plaintiffs' merchantability claims must fail because (1) they do not allege the defect existed at the time of sale; (2) they do not allege they notified their immediate sellers—Amazon and Best Buy—of the breach; and (3) they disclaimed any implied warranties with conspicuous language.  (*See* ECF 20-2 at 23).  The plaintiffs counter that a latent defect is one which necessarily exists at the time of purchase.  (*See* ECF 23 at 23).  They also argue that they were under no obligation to notify their immediate sellers, but only Lenovo, the sole party they seek to hold accountable.  (*See id*. at 24).

14

First, as to the defect's existence at the time of sale, the complaint states that the plaintiffs "could not have reasonably discovered the true, latent nature of the Defect"—which causes the hinges to separate from the device—"until *after* it manifested." (ECF 1 ¶¶ 35, 44, 52 (emphasis in original)). Lenovo, on the other hand, knew about the defect "prior to placing [the Yoga] into the stream of commerce" because, for example, it conducted "durability testing[.]" (*Id.* ¶¶ 6, 62). Lenovo makes much of the idea that pleading that a defect was latent is not the same as pleading that it existed at the time of sale, and that the plaintiffs admit the defects did not arise until years after purchase. (*See* ECF 24 at 20). But reading the complaint in the light most favorable to the plaintiffs, the court must draw the reasonable inference that for Lenovo to know the defect existed prior to placing the device into the stream of commerce, the defect must have existed prior to sale. In this case, while factual questions remain about whether the defect actually existed at the time of sale, any fair reading of the complaint suggests that the plaintiffs have satisfied their pleading burden on this point.

Next, with respect to seller notification, Lenovo relies on *Doll v. Ford Motor*, which held that "if a plaintiff wishes to claim a breach of the implied warranty against a manufacturer, the plaintiff must notify their immediate seller of the breach." 814 F. Supp. 2d at 542. But this case was later appropriately contextualized by *Brown-High v. L'Oreal USA, Inc.*, which makes the point that *Doll* concerned claims against a *manufacturer* who had not been provided notice. No. GJH-17-276, 2017 WL 5952688, at *4 (D. Md. Nov. 29, 2017). In *Brown*, the court found that breach of warranty claims against *retailers* failed because no notice was provided to them, but that claims against *manufacturers*—who did receive notice—could proceed, since the whole purpose of § 2-607 was to provide an opportunity to cure a defect prior to litigation. *Id.* In this case, the plaintiffs appear not to have notified their immediate sellers, but neither do they seek to

hold those immediate sellers liable.  The plaintiffs notified Lenovo, providing it with an opportunity to cure and satisfying the notification requirements under both Maryland and Missouri law.  (*See* ECF 1 ¶¶ 21, 31–32).

Finally, Lenovo argues that, under Missouri law, it properly disclaimed any implied warranties.  (*See* ECF 20-2 at 25).  The plaintiffs respond that this argument fails for two reasons: first, because the disclaimer was not provided prior to purchase, but instead was included in the box, and second, because the warranty cannot be disclaimed through unconscionable contractual terms.  (*See* ECF 23 at 25–26).  The court need not reach this issue at present.  Disclaimers are an affirmative defense and should seldom be resolved on a motion to dismiss unless all the relevant facts are clear from the face of the complaint.  *See Goodman v. Praxair, Inc.,* 494 F.3d 458, 464 (4th Cir. 2007).  The complaint does quote from the warranty, provides a hyperlink to a PDF of the warranty, and states that Lenovo did not sufficiently disclaim the implied warranty of merchantability and that any disclaimer is void as unconscionable, but it does not state when or in what manner the plaintiffs were presented with the disclaimer, making it inappropriate to reach the parties' arguments on this issue.  (*See* ECF 1 ¶¶ 84, 90).

### III.   RULE 9(b)'s PLEADING REQUIREMENTS

Lenovo also seeks dismissal of the plaintiffs' statutory consumer protection claims and their fraud by omission claims for failure to satisfy the heightened pleading requirements under Federal Rule of Civil Procedure 9(b).  (*See* ECF 20-2 at 27).  The plaintiffs do not dispute that fraud claims generally must be pled with particularity, but they contend that the standard for pleading fraud by omission is somewhat relaxed.  (*See* ECF 23 at 26).

The Federal Rules require that parties alleging fraud "must state with particularity the circumstances constituting fraud[.]"  Fed. R. Civ. P. 9(b).  Generally, this requires alleging the who, what, when, where, and how of an alleged fraud.  *U.S. ex rel. Ahumada v. NISH*, 756 F.3d 268, 280 (4th Cir. 2014).  The Fourth Circuit has cautioned, however, that a court should hesitate to dismiss complaints under Rule 9(b) if it is satisfied "(1) that the defendant has been made aware of the particular circumstances for which she will have to prepare a defense at trial, and (2) that [the] plaintiff has substantial prediscovery evidence of those facts."  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 784 (4th Cir. 1999).  And though the Fourth Circuit has not explicitly adopted any relaxed pleading requirements for fraud by omission claims, district courts in this circuit have done so.  *See, e.g., Ademiluyi v. PennyMac Mortgage Inv. Trust Holdings I, LLC*, 929 F. Supp. 2d 502, 533 (D. Md. 2013); *Doll*, 814 F. Supp. 2d at 538–39; *Anne Arundel Cty. v. Xerox State & Local Solutions, Inc.*, No. JFM-16-00563, 2016 WL 5720705, at *9 (D. Md. Sept. 30, 2016); *Schwartz v. Pella Corp.*, Nos. 2:14-mn-00001-DCC, 2:14-cv-00556-DCN, 2014 WL 7264948, at *6 (D.S.C. Dec. 18, 2014).  A relaxed pleading requirement accommodates the difficulties associated with pleading omissions as opposed to affirmative statements, given that omissions cannot be described in terms of the time, place, and contents of a misrepresentation or the identity of the person making the misrepresentation.  *See Shaw v. Brown & Williamson Tobacco Corp.*, 973 F. Supp. 539, 552 (D. Md. 1997).   What is required to plead fraud by omission is "a baseline level of particularity" that rises above "conclusory allegations of fraud[.]"  *Anne Arundel Cty. v. Xerox State & Local Solutions, Inc.*, 2016 WL 5720705, at *9 (and holding a complaint which simply alleged a failure to disclose "certain material facts" lacked the specificity required to satisfy even a relaxed Rule 9(b) standard).

17

In *Schwartz v. Pella Corp.*, for example, the plaintiffs alleged that the defendant was aware of a defect, concealed it from consumers, and that the plaintiffs would have taken different action had they known about the defect. 2014 WL 7264948 at *6.  On those allegations, the court denied a motion to dismiss for failure to comply with Rule 9(b).  *Id.* at *7.  And in *Doll v. Ford Motor Co.*, the District of Maryland held that plaintiffs had properly pled fraudulent concealment with particularity where they alleged the defendant was aware of a defect, the defendant concealed the defect, and the plaintiffs would have taken different actions had they known of the defect.  814 F. Supp. 2d at 538–39.

In this case, the plaintiffs claim they have adequately put Lenovo on notice by pleading the who, what, where, when, and how of the alleged fraud: specifically, that Lenovo (who) knew of the defective hinge (what) prior to sale (when), which it omitted from all the channels in which it sold devices (where) and which resulted in concealment and failure to disclose (how). (*See* ECF 23 at 27).  And they do so not in a general and conclusory manner but with at least a baseline level of particularity, alleging that Lenovo knew of the defective hinge system through four sources (durability testing, repair data, replacement data, and consumer reports), that Lenovo concealed the defect in all of its advertising (including advertisements on its website, referenced in the complaint), and that they would not have purchased the devices if they had known of the defect.  (*See* ECF 1 ¶¶ 8, 38 n.2, 53).  It is true that the plaintiffs do not state which advertisement they relied on, or on what date they viewed those advertisements.  But they do cite to specific advertisements and marketing materials with the implication that these are some of the many channels through which Lenovo failed to disclose the defect and with the implication that these advertisements concerning the hinge system were the reason that the plaintiffs purchased the product.  (*See* ECF 1 ¶ 15 ("These features persuaded Plaintiff Singh to purchase a

Class Device over competitive offerings.")).  This is at least as much as the *Doll* and the *Schwartz* plaintiffs alleged.  And, importantly, the complaint relies on pre-discovery evidence of, for example, consumer complaints, to provide Lenovo fair notice of the issues about which it will need to prepare a defense.  The plaintiffs' allegations are sufficient to state a claim for fraudulent omission and to withstand a challenge under Rule 9(b)'s pleading requirements.

## IV.   CONSUMER PROTECTION CLAIMS

Both Maryland's and Missouri's consumer protection statutes prohibit unfair or deceptive trade practices.  The MCPA proscribes fourteen categories of such practices, including "[f]ailure to state a material fact if the failure deceives or tends to deceive."  Md. Code Ann., Com. Law §§ 13-301(3), 13-303.  And the MMPA forbids the "concealment, suppression, or omission of any material fact in connection with the sale or advertisement" of any product.  Mo. Rev. Stat. § 407.020.1.  To state a claim under the MCPA a plaintiff must plead that "(1) the defendant engaged in an unfair or deceptive practice or misrepresentation, (2) the plaintiff relied upon the misrepresentation, and (3) doing so caused the plaintiff actual injury."  *Barr v. Flagstar Bank, FSB*, 303 F. Supp. 3d 400, 416 (D. Md. 2018) (appeal filed).

The plaintiffs clarified that their claims are based on omissions rather than misrepresentations, leaving Lenovo to contest just the third element of the MCPA claim, arguing that Singh (but not Cox) sustained no cognizable injuries insofar as she only pleads that she would not have purchased or would have paid less for the device had she known of the defect.  (*See* ECF 20-2 at 32).  In essence, Lenovo argues that she has not yet suffered any ascertainable damages, and cites to *Demetry v. Lasko Prods., Inc.*, 284 F. App'x 14 (4th Cir. 2008) (per curiam) for the proposition that allegations that someone would not have purchased a product had she been aware of a defect are insufficient to support the third element of the MCPA claim.

But in *Demetry*, the plaintiff did not avail himself of free replacements offered by the manufacturer pursuant to a recall, nor did he allege that any of the products he purchased actually were defective, leaving the court to reasonably conclude that there were no injuries. *Id*. at *15.

A more instructive case is one cited by the plaintiffs, *Lloyd v. General Motors*, 397 Md. 108 (2007). In that case, the plaintiffs alleged that as a result of an omission, they suffered a loss measurable by the amount it would cost them to repair the defect. *Id.* at 149. It was of "no import," the court stated, "that they have not yet repaired the defective [products]" in order to allege a loss under the act. *Id*. at 149 n.17. All that was required was to "articulate some manifestation of loss," including "a difference between what was expected and what was received as a result of [a] misrepresentation." *Id*.

Here, plaintiff Singh alleges a difference between what was expected (a functioning device with a working hinge capable of "360-degree rotation" and "touch-screen features") and what was received (a device rendered inoperable by a latent defect which caused the screen to "flicker and shut off," the webcam to "cease[] functioning," and the loss of the device's "portability" and "hybrid functionality"). (ECF 1 ¶¶ 15, 18–20). In addition, Singh alleges that she will incur costs to repair or replace the defective product. (ECF 1 ¶¶ 8, 22). And unlike in *Demetry*, where the plaintiffs had a viable remedy under a recall and no evidence of having actually purchased a defective product, in this case Lenovo's warranty—even if it had not expired—would provide only a "similarly defective dual-hinge system" as a replacement for Singh's Yoga, which has ceased functioning. (*Id*. ¶ 86). Under *Lloyd*, therefore, Singh's allegations of a "manifestation of loss" are sufficient to withstand a motion to dismiss.

V.     UNJUST ENRICHMENT

A claim for unjust enrichment has three elements: (1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) acceptance or retention by the defendant of the benefit without the payment of its value.  *See Hill v. Cross Country Settlements, LLC*, 402 Md. 281, 295 (2007).  An action for unjust enrichment cannot be maintained when the subject matter of the claim is, as here, governed by an express contract.  *See Janusz v. Gilliam*, 404 Md. 524, 537 (2008).  There are, however, several exceptions under Maryland law, including: (1) if the plaintiff adduces evidence of fraud or bad faith on the part of the defendant, and (2) if the contract between the parties does not govern the entire subject matter of the claim. *Id.*; *see also Jones v. Koons Automotive, Inc*., 752 F. Supp. 2d 670, 688 (D. Md. 2010).  And under Missouri law, a plaintiff is entitled to bring an unjust enrichment claim as an alternative ground for relief.  *Hays v. Nissan N. Am., Inc.*, 297 F. Supp. 3d 958, 963–64 (W.D. Mo. 2017).  The plaintiffs argue that allegations of fraud permeate their complaint, allowing Singh to pursue the Maryland claim, and that unjust enrichment was pled in the alternative, allowing Cox to pursue the Missouri claim.  (*See* ECF 23 at 33).

With regard to Maryland law, Lenovo relies on its previously raised argument that there are no proper specific allegations of fraud to support an exception to permit the claim to move forward.  But because the plaintiffs have properly pled fraud, Singh's claim for unjust enrichment under Maryland law may proceed.  *See Doll*, 814 F. Supp. 2d at 551.

With regard to Missouri law, Lenovo cites *Budach v. NIBCO, Inc*. for the proposition that an unjust enrichment claim that relies on a warranty cannot be pled in the alternative.  No. 2:14-cv-04324, 2015 WL 3853298 at *8 (W.D. Mo. June 22, 2015).  The plaintiff in *Budach* alleged he would not have purchased a product had he known of its defect and had he known that the

company would not honor its express warranty.  *Id*.  As a result, the court concluded that the

unjust enrichment claim "arises out of the express warranty contract and must be dismissed." *Id*.

Here, though, the unjust enrichment claim is premised not on the allegation that Lenovo failed to

honor its warranty provisions, but rather on the allegation that the warranty was limited to such a

degree that it is unconscionable and thus void.  A plaintiff is "certainly entitled to bring an unjust

enrichment claim as an alternative ground for relief," *Hays*, 297 F. Supp. 3d at 963–64 (internal

quotation omitted), and the fact that a plaintiff "cannot simultaneously recover damages for both

breach of an express contract and unjust enrichment does not preclude that plaintiff from

pleading both theories in her complaint[,]" *Owen v. General Motors Corp*., No. 06-4067-CV-

CNKL, 2006 WL 2808632, at *2 (W.D. Mo. Sept. 28, 2006).[5]  While it is not possible for Cox to

recover under both theories, she is not precluded from pleading unjust enrichment in the

alternative.

## VI.   FRAUDULENT CONCEALMENT

Finally, the plaintiffs also pursue standalone fraudulent concealment claims.  (*See* ECF

23 at 38).  Because the standards for fraudulent concealment differ under Maryland law and

Missouri law, the court will address each plaintiff's claim in turn.

### A.   Singh

Under Maryland law, fraudulent concealment requires showing that (1) the defendant

owed a duty to the plaintiff to disclose a material fact; (2) the defendant failed to disclose the

fact; (3) the defendant intended to defraud or deceive the plaintiff; (4) the plaintiff took action in

---

[5] Lenovo also argues that these claims cannot be pled in the alternative because the complaint incorporates the prior allegations and does not explicitly state unjust enrichment is pled in the alternative.  But *Pearlstone v. Costco*, which allowed alternative pleading where an unjust enrichment claim was explicitly pled in the alternative and where the count did not incorporate the other allegations in the complaint, does not state that unjust enrichment *must* be explicitly pled in the alternative or that it must not incorporate other allegations in the complaint.  No. 4:18CV630 RLW, 2019 WL 764708, at *3–4 (E.D. Mo. Feb. 21, 2019).  These technicalities are insufficient to defeat Cox's unjust enrichment claim.

justifiable reliance on the concealment; and (5) the plaintiff suffered damages as a result of the defendant's concealment.  *Lloyd*, 397 Md. at 138.

Lenovo primarily challenges Singh's ability to show that it had a duty to disclose. Maryland does not recognize a general duty "to disclose facts to the other party."  *In re Wincopia Farms, LP*, 499 F. App'x 233, 236 (4th Cir. 2012).  But a duty to disclose will arise "where the defendant makes an active misstatement of fact, or only a partial or fragmentary statement of fact, which misleads the plaintiff to its injury."  *Odyssey Travel Center, Inc. v. RO Cruises, Inc.*, 262 F. Supp. 2d 618, 629 (D. Md. 2003).  Lenovo argues that any statements it made were puffery, and that Singh cannot show that a partial statement of fact led to her injury without demonstrating that she saw the statements prior to purchasing her laptop.  (*See* ECF 20-2 at 37).

A statement is considered non-actionable puffery if a claim is "extremely unlikely to induce consumer reliance," while "quantifiable" statements and "misdescriptions of specific or absolute characteristics of a product" are actionable. *Newcal Indus., Inc. v. Ikon Office Solution*, 513 F.3d 1038, 1053 (9th Cir. 2008).  Here, the complaint states that Lenovo represented the hinge system would allow the screen on a Yoga to "fold backwards," "flip around 360 degrees," and "transition seamlessly" from laptop to tent to stand to tablet, and that Lenovo marketed its devices as being able to withstand "25,000 open-close cycles," which Lenovo estimates is at least eight years of use.  (ECF 1 ¶¶ 41, 46, 86).  Allegations about "seamless transitions" are too vague and general to be actionable, but Lenovo's specific claims that its products can withstand 25,000 open-close cycles—or eight years of use—may be actionable.  This "active misstatement of fact," *Odyssey Travel Center, Inc.*, 262 F. Supp. 2d at 629, is sufficient to create a duty to disclose.

Singh also adequately alleges the remaining elements of her fraudulent concealment claim: that Lenovo failed to disclose the defect, (ECF 1 ¶ 90); that Lenovo intended to deceive her, (*id.* ¶ 148); that she took action in justifiable reliance on the concealment (*id.* ¶ 15); and that she suffered damages in the form of repair or replacement costs, (*id.* ¶ 22). *See Lloyd*, 397 Md. at 138. Accordingly, she has adequately stated a claim for fraudulent concealment.

**B.    Cox**

Under Missouri law, to state a claim for fraudulent concealment a plaintiff must plead that (1) a defendant had knowledge of undisclosed material information, which (2) the plaintiff would not have discovered through ordinary diligence. *Pollard v. Remington Arms Co., LLC*, No. 13-0086-CV-W-ODS, 2013 WL 3039797, at *5 (W.D. Mo. June 17, 2013).

First, Lenovo denies that it had knowledge of the defect at the time of sale. But the court is required to accept as true all of Cox's well-pled allegations, including that Lenovo obtained knowledge of the defect from multiple sources, such as its own repair and replacement data. (*See* ECF 1 ¶¶ 6, 56–57). As to Lenovo's argument that these assertions are speculative and insufficient to put them on notice of a defect, the court must draw all reasonable inferences in favor of the plaintiffs. Here, Cox pled that Lenovo has, since 2012, "claimed that it subjects Yoga hinges to durability testing designed to ensure the hinges last at least 25,000 cycles of being opened and closed without failure[.]" (*Id.* ¶¶ 56, 57). If the Yoga does in fact break down well before the promised eight-year lifespan, as Cox alleges, then it would follow that Lenovo would have discovered this fact through its purported durability testing. Thus, Cox has satisfied her burden of pleading Lenovo's knowledge.

Next, a plaintiff's investigative diligence is a question of fact and generally not appropriate for resolution on a motion to dismiss. *Anderson v. Ford Motor Co*., No. 17-3244-

CV-S-BP, 2017 WL 6733972, at *4 (W.D. Mo. Dec. 29, 2017) (and noting that a plaintiff had

adequately pled due diligence by claiming to have researched a purportedly defective product

prior to purchase).  Where, as here, Cox has pled that she "researched different laptops" prior to

purchasing the Yoga, any arguments about the sufficiency of her inquiries should not be resolved

on a motion to dismiss.  (ECF 1 ¶ 25).  Therefore, Cox has also plausibly alleged fraudulent

concealment.

## CONCLUSION

For the reasons stated herein, Lenovo's motion to dismiss will be denied in its entirety.  A

separate order follows.


1/4/2021                                                                           /s/
Date                                                               Catherine C. Blake
                                                                   United States District Judge